IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Willie Lee James, #249221, )<br>　　　　　　　　Petitioner, )<br>　　vs. )<br>Colie Rushton, Warden of )<br>McCormick Correctional Institution, )<br>　　　　　　　　Respondent. ) | Civil Action No. 6:07-2846-CMC-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

　　　　　The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

　　　　　Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND OF THE CASE

　　　　　The record reveals that the petitioner is currently confined in the McCormick Correctional Institution of the South Carolina Department of Corrections (SCDC), pursuant to commitment orders from the Florence County Clerk of Court.  The Florence County Grand Jury indicted the petitioner at the September 1997 term of court for armed robbery and possession of a firearm during the commission of a crime of violence (1997-GS-21-1106).  Attorney Steven L. Hill represented him on these charges.  On April 21, 1998, the petitioner received a jury trial before the Honorable Joseph J. Watson, and was found guilty of armed robbery.  Judge Watson sentenced him to life without parole.

The petitioner timely served and filed a notice of appeal. Assistant Appellate Defender Tara S. Taggart represented him on appeal. On September 1, 1999, the petitioner filed his final brief of appellant. He presented the following issues for review in his brief:

> (1)    Whether appellant's sentence violates the 5th and 8th Amendments of the United States Constitution prohibiting double jeopardy and cruel and unusual punishment.

> (2)    Whether appellant's sentence violates the prohibition against *ex post facto* laws.

The State filed a final brief of respondent on July 26, 1999. Assistant Attorney General Norman Mark Rapoport represented the State on appeal. On July 19, 2000, the South Carolina Supreme Court affirmed the petitioner's conviction and sentence in an unpublished opinion. *The State v. Willie Lee James,* 00-MO-101 (S. C. S.Ct., filed July 19, 2000). The South Carolina Supreme Court sent the remittitur to the Florence County Clerk of Court on August 4, 2000.

The petitioner then filed a *pro se* post-conviction relief (PCR) application (01-CP-21-222) on February 12, 2001, in which he alleged the following grounds for relief (verbatim):

> **GROUND ONE:** Applicant was deprived of effective assistance of Trial and Appeals Counsels in violation of Article 1, Sections 3 & 14 of the South Carolina Constitution and the sixth and fourteenth Amendments of the United States Constitution.

> 1.    Properly and effectively investigate all matters of case, applicable laws, Court opinions, and present a full, proper and effective defense;

> 2.    Properly object to, argue against, defend Applicant against and preserve for Appeal the Trial Court's erroneous burden-shifting Jury instructions-of-reasonable doubt, jurisdiction, circumstantial evidence, alibi and presumption of innocence.

2

3.    Move for a hearing to challenge and present facts of trial that Trial Judge was bias, and conducted a one-sided Trial in favor of prosecution.

4.    Move for a Hearing to present facts that overall conduct of police and prosecution was grossly improper to the point of violating basic rudiments of guarantess of due process of Law, and a fair trial by Jury.

5.    Protect and ensure Applicant was not deprived of a Fair Trial, Trial by Jury, and presumption of innocence, that deprived Applicant of guaranteed rights of the 5th, 6th, 8th, and 14th Amendments of the United States Constitution; and,

6.    Trial Counsel failed to properly assist Appeal Counsel and Appeal Counsel failed to properly raise and argue issues properly and effectively.

**GROUND TWO:** The Police, Prosecution, Court and State of South Carolina deprived Applicant of guaranteed rights in multiple violations of the 4th, 5th, 6th, 8th, and 14th Amendments of the United States Constitution.

1.    Police, prosecution and Court in concert sought to ensure Applicant was convicted regardless of whether he was guilty or not.

2.    Prosecution's conduct prior to and during Trial as a whole constituted gross prosecutorial misconduct; and,

3.    Trial Court was without Jurisdiction to accept verdict and sentence Applicant.

The State filed its return on February 11, 2002. The Honorable B. Hicks Harwell held an evidentiary hearing into the matter on December 18, 2002, at the Florence County Courthouse. The petitioner was present at the hearing; and attorney John M. "Shannon" Prosser represented him. Assistant Attorney General Allen Bullard represented the State. The petitioner testified on his own behalf, and he presented the testimony of trial counsel, Mr. Hill.

On March 10, 2003, Judge Harwell filed an order in which he denied relief and dismissed the application with prejudice. The order of dismissal addressed the petitioner's

3

allegations that his trial counsel was ineffective because counsel (1) failed to object to the failure of his indictments to be filed with the clerk of court; (2) failed to object to his sentencing to life without parole (LWOP) on the ground that he was not served with written notice of the State's intention to seek LWOP; (3) failed to request the trial court charge the jury on larceny as a lesser included offense; (4) failed to determine the status of the direct appeal of an armed robbery conviction he received in 1973, which served as the prior "most serious" offense for purposes of his LWOP sentence; and (5) failed to object to the trial court's reasonable doubt charge.

The petitioner timely served and filed a notice of appeal. Assistant Appellate Defender Eleanor Duffy Cleary represented him in collateral appellate proceedings. Assistant Attorney Generals Molly R. Crum and Sabrina C. Todd represented the State. On April 12, 2004, the petitioner filed a petition for writ of certiorari. The only question presented in the petition for writ of certiorari was stated as follows:

> Whether trial counsel was ineffective for failing to object to the state's failure to provide notice to the defendant of its intention to seek life without parole as required by S.C. Code Ann. 17-25-45(H)?

The State filed a return to petition for writ of certiorari on July 23, 2004. At some point jurisdiction over the appeal was transferred from the South Carolina Supreme Court to the South Carolina Court of Appeals. In an order filed August 24, 2005, two judges of a three-judge panel granted certiorari and directed the parties to brief the issue raised. Judge John Kittredge dissented from the grant of certiorari. The petitioner filed the brief of petitioner on September 23, 2005. The State filed a brief of respondent on January 24, 2006. The South Carolina Court of Appeals filed a published opinion on March 27, 2006, reversing the denial of post-conviction relief and remanding the matter. *James v. State*, 368 S.C. 323, 628 S.E.2d 892 (Ct. App. 2007). The Court of Appeals sent the Remittitur to the Florence County Clerk of Court on April 12, 2006. However, the South Carolina Supreme Court filed

4

an order on April 20, 2006, directing the Court of Appeals to recall the remittitur and to notify the Clerk of the South Carolina Supreme Court when that had been done. On April 24, 2006, the Court of Appeals filed an order directing the Florence County Clerk of Court to return the remittitur.

On June 8, 2006, after the remittitur had been recalled, the South Carolina Supreme Court filed an order directing the parties to brief the following issue:

> Did the Court of Appeals err in finding defense counsel was ineffective for failing to object to the State's failure to provide written notice to respondent, as well as counsel, of its intention to seek a sentence of life imprisonment without parole pursuant to S.C. Code Ann. § 17-25-45(H) (2003)?

The State filed a brief of petitioner on July 12, 2006, and the petitioner filed a brief of respondent on October 11, 2006. The South Carolina Supreme Court filed an opinion on February 27, 2007, in which it reversed the decision of the South Carolina Court of Appeals and held that the petitioner was not entitled to relief based upon his claim that counsel rendered ineffective assistance. *James v. State*, 372 S.C. 287, 641 S.E.2d 899 (2007). The South Carolina Supreme Court sent the remittitur to the Florence County Clerk of Court on March 15, 2007.

In his *pro se* petition now before this court, the petitioner raises the following allegations (verbatim):

> **GROUND ONE:** Ineffective Assistance of Counsel
> **SUPPORTING FACTS:** Counsel was ineffective for failing to object to the failure of the indictment to be filed with the Clerk of Court. As a result, the Trial Court lacked subject matter jurisdiction. SCRCRIMP. Rule 3 (c) read "S in pertinent part" "The Solicitor shall take action on warrant by (1) Preparing and indictment for presentment to the Grand Jury, which indictment shall be filed with the Clerk of Court. In Petitioner's case this was not done.
>
> **GROUND TWO:** Ineffective Assistance of Counsel
> **SUPPORTING FACTS:** Counsel was ineffective for failing to object to Petitioner's sentencing to life without parole (LWOP) on the ground that Petitioner was never served with written

5

notice of the State's intention to seek lief without parole. This was error.

**GROUND THREE:**  Ineffective Assistance of Counsel
**SUPPORTING FACTS:**  Counsel was ineffective for failing to request the Trial Court charge the jury on the Larceny as a lesser included offense. The Court conclusion and ruling's were in error.

**GROUND FOUR:**  Ineffective Assistance of Counsel
**SUPPORTING FACTS:**  Counsel was ineffective of failing to determine the status of a prior direct appeal of 1973 Armed Robbery Conviction. As a result he was prejudice by Counsel's Failure's.

On November 28, 2007, the respondent filed a motion for summary judgment. By order filed November 29, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion.   The petitioner filed his response to the motion on March 11, 2008.


### UNDERLYING CRIMINAL CASE

The following evidence was presented at the petitioner's trial.  In July 1997, Anthony Coe was a manager-trainee at the Pantry on the Pamplico Highway, in Florence County, South Carolina.  Anthony was working the10:30 p.m. - 6:30 a.m. shift on July 8, 1997 (App. 95).  While Anthony was sweeping the floor, the petitioner came in, and Anthony walked behind the counter.  Anthony asked the petitioner if he needed anything. The petitioner told Anthony that he wanted "a little bit of money."  Anthony joked, saying that he needed a little bit of money, too.  At this point, the petitioner reached into his pants pocket.  Anthony then saw what he thought was the end of a barrel of a gun in the petitioner's left hand.  The petitioner told Anthony, "don't fuck with me."  He demanded that Anthony hand over his money, and Anthony complied.  Before leaving, the petitioner told Anthony that he would kill him if he told anyone (App. 95-97, 99-101,108,116).  Anthony

6

immediately contacted the police and he gave them a description of the robber (App.101-105, 133-34, 151-53). Anthony subsequently identified the petitioner's photograph at the police station (App. 105-107, 154-56).

The petitioner was contacted by the police and came into the police station for an interview two days later (App. 158-60). The petitioner gave a statement admitting that he had demanded money from Anthony. However, he claimed that he only flashed a cigarette lighter and not a gun (App. 165-66, 175-77). The petitioner testified on his own behalf at trial. He admitted that he had smoked crack cocaine that evening, then rode around on his bicycle. The petitioner said he was "loose" and "high." When he saw the Pantry, he noticed Anthony sweeping. No one else was around. The petitioner thought he would "just try it" and went inside to "ask" the clerk for some money (App. 196-97). The petitioner told Anthony that he wanted money, and they both laughed. When Anthony asked what he had, the petitioner flashed his cigarette lighter. He then put it back into his pocket. Anthony put the money on the counter, and the petitioner left. The petitioner did not curse at Anthony or threaten him (App. 197-202). The petitioner testified he did not intend to commit a robbery when he first set out that night (App. 195-96, 207).

A disputed issue at trial was whether or not the petitioner was armed with a gun during the robbery. Anthony testified that he saw what he believed to be a gun barrel in petitioner's left hand. He was not sure what type of gun the petitioner had (App. 116, 119-228). Anthony was sure that he did not see a cigarette lighter (App. 124-25). Officer Keith Hanley thought that the petitioner may have used a smaller caliber semi-automatic pistol (App. 137-40).

In his statement to the police, the petitioner admitted that he used a Zippo lighter that resembled a gun (App. 176-80). However, the petitioner claimed at trial that he made this statement because he was "feeling easy and laxxed" during the police

7

questioning.   The petitioner testified that he was "unconcerned" about what he told the police because he had admitted to committing the robbery (App. 202-207).

## APPLICABLE LAW

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

## ANALYSIS

### *Ground One*

In his first ground for relief, the petitioner alleges that his trial counsel was ineffective for failing object to the State's failure to file the indictment with the Clerk of Court. He claims the trial court lacked subject matter jurisdiction because his indictments were not

8

filed with the Clerk of Court as required by South Carolina Rule of Criminal Procedure 3(c)(1).[1]

The petitioner asserted at the PCR hearing that the indictment provided to him was not clocked or stamped by the Clerk of Court and that the trial court lacked subject matter jurisdiction because the indictments were not filed with the Clerk of Court as required by Rule 3 (App. 320-22, 325, 333-34). The PCR judge, however, asked the State to respond to this before receiving any additional testimony. The State noted that Rule 3 only requires an indictment to be filed. It does not require the Clerk to clock or stamp the indictment. In the present case, the State acquired a copy of the indictment from the Clerk of Court and argued that this suggested that the indictment had been filed. Further, the State observed that Rule 3 is merely a procedural rule and that the failure to comply with the requirements of it would not deprive the trial court of subject matter jurisdiction. In response to the PCR judge's inquiry as to whether the procedure had been followed, the State indicated that the record on appeal had certified true copies filed by the Clerk's Office (App. 322-24).

The PCR judge found in the order of dismissal that the indictment was filed with the Clerk of Court. He further found that "[t]he records before this Court came from the clerk of court. Thus, the indictment was clearly filed with the clerk. The indictment was assigned a criminal case number and indicates that it was true billed by the grand jury" (App. 391-92). Therefore, the PCR judge found that "the solicitor fully complied with Rule 3(c)(1)." He then rejected the petitioner's position that "the Rule requires the indictment to

---

[1]This rule provides in pertinent part:
> c) Action on Warrant. Within ninety (90) days after receipt of an arrest warrant from the Clerk of Court, the solicitor shall take action on the warrant by (1) preparing an indictment for presentment to the grand jury, which indictment shall be filed with the Clerk of Court, assigned a criminal case number, and presented to the Grand Jury . . . .

SCRCrimP 3(c)(1).

bear a date stamp from the clerk's office.  This Court finds that a date stamp is not required to comply with Rule 3.  Furthermore, this Court finds that this rule is merely a procedural rule and, therefore, noncompliance would not divest the trial court of jurisdiction.  *Cf.*, *State v. Culbreath*, 282 S.C. 38, 316 S.E.2d 681 (1984)" (App. 391).  Based upon these findings, the PCR judge concluded that the petitioner had failed to carry his burden of proof on his ineffective assistance of counsel claim (App. 394-95).

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, the petitioner "must show that counsel's performance was deficient."  *Id.* at 687.  To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.* at 697.  Review of counsel's performance is "highly deferential."  *Id.* at 689.

The petitioner's claim is not cognizable in federal habeas corpus.  *See Wright v. Angelone*, 151 F.3d 151, 157 (4th Cir. 1998); *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir.1976) (a "[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary").  *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions.").  Furthermore, even if the claim was cognizable in federal habeas corpus, it fails on the merits.  As noted by the PCR

10

court and the respondent, the front cover of the indictment is certified by the Clerk of Court as a true copy (App. 430).  Accordingly, it appears the indictment was in fact filed with the Clerk of Court; it simply was not file stamped.  However, even if it was not filed, the failure to file in accordance with the procedural rule does not deprive the trial court of subject matter jurisdiction.  In *State v. Culbreath*, 316 S.E.2d 681 (S.C. 1984), the state supreme court interpreted South Carolina Rule of Criminal Procedure 3(c), which requires solicitors to act on a warrant within 90 days of its issue.  The court agreed with and affirmed the trial court's holding that this rule is administrative, not jurisdictional.  *Id*. at 681.  Further, the Court found that a solicitor's delay does not within itself invalidate a warrant or prevent subsequent prosecution.  *Id*.

Based upon the foregoing, the petitioner cannot show either deficient performance or prejudice resulting from his counsel's failure to object.  The state court's decision was not contrary to, nor did it involve an unreasonable application of, Supreme Court precedent.  Further, the decision was based on a reasonable determination of the facts in light of the evidence presented in the State court proceeding.  Accordingly, the claim fails.

### Ground Two

In ground two, the petitioner alleges that his trial counsel "was ineffective for failing to object to Petitioner's sentencing to life without parole (LWOP) on the ground that Petitioner was never served with written notice of the State's intention to seek life without parole."[2]

---

[2]South Carolina Code Annotated § 17-25-45(H) provides:
Life Sentence for person convicted for certain crimes.
***
(H) Where the solicitor is required to seek or determines to seek sentencing of a defendant under this section, written notice must be given by the solicitor to the defendant and defendant's counsel not less than ten days before trial.

11

At the petitioner's April 1998 trial, the State noted it had not filed the notice of intention to seek an LWOP sentence with the Clerk of Court's Office, but stated that it had given written notice to the defense on September 3, 1997. Trial counsel stated, "we had notice. We have known about this for months. I don't contest that" (App. 8). The petitioner testified at the PCR hearing that he never personally received written notice that the State was seeking life without parole. However trial counsel, Mr. Hill, did not object (App. 334-37). Mr. Hill testified that the prosecutor had not personally served the petitioner with the notice of intent to seek an LWOP sentence or filed the notice with the Clerk of Court at the time of trial. Although Mr. Hill did not make an objection to these alleged defects in the notice, he testified that the transcript of the petitioner's trial was accurate. Both he and the petitioner were aware of the consequences he faced and had been aware of the State's intent "for a long time" before trial. In fact, they were aware of this before the prosecutor served notice on Mr. Hill, and Mr. Hill had discussed this issue with the petitioner (App. 359-60, 363-365, 367-69).

The PCR judge found that, although the petitioner was not personally served with the notice, both the petitioner and trial counsel were aware of the State's intention to seek LWOP even before written notice was actually provided to counsel. Counsel was eventually provided written notice more than 10 days prior to trial (App. 392). The PCR judge rested his ruling on *State v. Washington*, 526 S.E.2d 709 (S.C. 2000), and he distinguished this case from *State v. Johnson*, 552 S.E.2d 339 (S.C. Ct. App. 2001). In doing so, the PCR judge concluded that written notice to the petitioner's attorney of record, his agent for service of any other documents, was sufficient to comply with the statutory requirement to provide written notice to the petitioner. The PCR judge additionally found that because an LWOP sentence was mandatory in the petitioner's case under S.C. Code Ann. § 17-25-45(A) (2003), he only needed actual notice under the statute (App. 392-93).

On certiorari, the South Carolina Court of Appeals relied upon *Johnson* and reversed the PCR judge's decision. *James v. State*, 628 S.E.2d 892 (S.C. Ct. App. 2007), *rev'd*, *James v. State*, 641 S.E.2d 899 (S.C. 2007). The Supreme Court of South Carolina, however, directed the state court of appeals to recall the remittitur on its own initiative and, after the parties had briefed the matter, reversed the decision of the state court of appeals. The court held that the petitioner was not entitled to relief based upon his claim that counsel rendered ineffective assistance. *James v. State*, 641 S.E.2d 899 (S.C. 2007). In reversing the court of appeals, the state supreme court reasoned as follows:

> The State argues that Respondent's trial counsel was not ineffective for failing to object that Respondent had not been provided with written notice of the State's intention to seek an LWOP sentence prior to trial. We agree.
>
> As an initial matter, the posture in which the issue of Respondent's receipt of notice arose at trial is revealing. During the preliminary motions phase immediately preceding Respondent's trial, the parties engaged in a discussion with the trial court about the issue of notice. At the beginning of this colloquy, both Respondent and Respondent's counsel indicated that each was aware that Respondent was facing the possibility of an LWOP sentence. The court then inquired as to whether the solicitor had given written notice of the State's intention to seek such a sentence, and the solicitor indicated that although a copy of the notice was not filed with the clerk's office, he had provided written notice to Respondent's counsel approximately six months prior to trial. Respondent's counsel then indicated that the defense "had notice" and had "known about this for months." The issue of notice was not raised again until the sentencing phase of Respondent's trial, and during the sentencing proceeding, the solicitor provided the court with a copy of the written notice he had previously given to Respondent's counsel. The court indicated that the parties had agreed that the defense was on notice as to the potential sentence in the case and that "notice was adequate."
>
> As these facts demonstrate, the issue of notice arose first at the pre-trial stage and the discussion concluded when Respondent's counsel stipulated that the defense had received adequate notice. Given this scenario, the proper interpretation of Respondent's PCR claim is that counsel should have objected that Respondent had not been provided with written

13

notice as required by the statute instead of stipulating that notice was adequate. Respondent's claim may not be interpreted as an assertion that his counsel should have stipulated as he did during the pre-trial phase and then raised this issue again at sentencing. *See Erickson v. Jones Street Publishers, L.L.C.*, 368 S.C. 444, 475-76, 629 S.E.2d 653, 670 (2006) (providing that generally, a party may not complain about an error induced by his own conduct).

This clarification is important because assuming that Respondent's counsel was deficient for failing to object to the alleged non-compliance with the statute, Respondent cannot demonstrate that this deficiency resulted in any prejudice. As this Court's precedent provides, jeopardy does not attach in a jury trial until the jury is sworn and impaneled. *State v. Rountree*, 127 S.C. 261, 262, 121 S.E. 205, 205 (1924). In the instant case, counsel's stipulation occurred pre-trial and before the jury was sworn. Thus, assuming that competent counsel would have objected based on the lack of written notice instead of stipulating that notice was adequate, upon hearing such an objection, the solicitor could simply have dismissed the indictment, re-indicted Respondent, provided Respondent with written notice, and proceeded to seek an LWOP sentence. Furthermore, leaving jeopardy analysis aside, it would have been entirely proper for the solicitor, upon hearing counsel's objection, to have concluded with the pre-trial motions in the case and postponed Respondent's trial to allow the solicitor to provide Respondent with written notice. Either of these procedures would have resulted in Respondent receiving an LWOP sentence despite the objection that Respondent contends trial counsel should have offered.

The court of appeals was mistaken in characterizing the prejudice in this case as Respondent being sentenced in violation of the statute. Instead, the proper characterization of any error is that Respondent agreed to proceed immediately to trial despite the violation of the statute. Instructively, there is no authority that would prevent the State, should this Court grant Respondent's request for a new trial, from seeking an LWOP sentence under the recidivist statute on remand. FN1

[FN1. Indeed, if Respondent was charged with armed robbery on remand, a "most serious offense" as defined in § 17-25-45(C), the solicitor would, in fact, be required to seek an LWOP sentence under the recidivist statute. See S.C. Code Ann. § 17-25-45(G) (2003). Similarly, if Respondent was again found guilty, the trial court would have no choice but to sentence Respondent to LWOP.]

14

Respondent cannot demonstrate that but for trial counsel's errors, there is a reasonable probability the result of the trial would have been different. Accordingly, the court of appeals erred in determining that Respondent received ineffective assistance from his trial counsel. FN2

[FN2. Though we express no opinion on how our analysis would differ in the face of such a claim, we note that Respondent has not asserted that receiving written notice would have affected the merits of the defense he presented at trial.]

The State's argument in favor of reversal goes along different lines. FN3 Specifically, the State argues that the court of appeals erred in reversing Respondent's sentence because § 17-25-45(H) requires only actual notice. Again, we agree.

[FN3. Although the State has not presented the prejudice analysis we have outlined, our appellate rules provide that we may affirm a decision upon any grounds appearing in the record. Rule 220(c), SCACR.]

The recidivist statute's notice provision, § 17-25-45(H), provides:

> Where the solicitor is required to seek or determines to seek sentencing of a defendant under this section, written notice must be given by the solicitor to the defendant and the defendant's counsel not less than ten days before trial.

Our decision in *State v. Washington* controls the resolution of this issue. That case involved a prosecution for first degree burglary, and although the solicitor gave the defendant written notice that he would be seeking a sentence under the recidivist statute, due to errors in the original indictment, the solicitor later re-indicted the defendant. 338 S.C. at 398, 526 S.E.2d at 711-12. After the re-indictment, the solicitor did not send a second notice to the defendant. *Id.* at 398, 526 S.E.2d at 712.

We held that the failure to send a second notice to the defendant did not prevent the imposition of an LWOP sentence under the recidivist statute. After recounting the fact that South Carolina law has historically not required that a defendant be informed if he is going to be punished more severely on the basis of his previous convictions, we stated "[t]his Court has found that under such notice statutes, the law only requires

15

actual notice." *Id*. at 399, 526 S.E.2d at 712. Ultimately, this Court concluded that since the defendant "had actual notice of the State's intent, a second notice following re-indictment was unnecessary." *Id*.

Despite *Washington*'s clear pronouncement, the court of appeals reached a contrary interpretation of § 17-25-45(H) in *State v. Johnson*, on which the court based its decision in the instant case. In *Johnson*, the court of appeals held:

> By its words in the recidivist statute, the General Assembly has mandated that the solicitor "must" notify the defendant and the defendant's counsel in writing if the solicitor intends to seek a life sentence without the possibility of parole.... In our view, actual notice under section 17-25-45(H) is insufficient unless and until the General Assembly decides otherwise and amends the statute itself.

347 S.C. at 70, 552 S.E.2d at 340. The court of appeals distinguished *Washington* on the grounds that, in that case, the defendant had received written notice that the solicitor was seeking to invoke the recidivist statute, albeit before the original indictment was dismissed. Johnson, 347 S.C. at 71, 552 S.E.2d at 341. The court opined that *Washington* was decided on the basis that the prior written notice sufficiently satisfied the statute's written notice requirement. *Id*.

The fact that we declined to grant a writ of certiorari to review the court of appeals' decision in *Johnson* is not an impediment to our reviewing the merits of that decision now. Although there are subtle distinctions in the facts presented in *Washington* and *Johnson*, any attempt to make a meaningful distinction between the cases does not withstand serious scrutiny. FN4 Thus, we are faced with a situation in which this Court has made a clear pronouncement on an issue, and the court of appeals has subsequently strayed from adhering to that pronouncement. Either the rule we announced in *Washington* requires revision, or the rule requires restating.

[FN4. While the scenario in *Washington* dealt with the defendant's receipt of written notice in a re-indictment situation, the issue of notification in *Johnson* dealt with the defendant's attorney, who had not provided with written notice at any time. In light of the actual holdings in these cases, however, this distinction is insignificant.]

16

Nothing about our holding in *Washington* was equivocal, and we can discern no sufficient rationale for adopting a rule contrary to the one we there advanced. The purpose of § 17-25-45(H) is to assure that a defendant and his counsel have actual notice that the State is seeking a sentence under the recidivist statute at least ten days prior to trial. Accordingly, so long as the defendant and his counsel, at least ten days prior to trial, possess actual notice of the State's intention to seek a sentence under South Carolina's recidivist statute, the statute has been satisfied. As the court of appeals' decision in *State v. Johnson* is inconsistent with this pronouncement, it is overruled. FN5

[FN5. As a practical matter, the most effective way of assuring that both defendant and counsel receive actual notice in the required time frame is to provide them notice in writing. Though this seems a simple task, the frequency with which this issue has appeared in our jurisprudence reveals that it is overlooked with surprising regularity. This problem ought to be easily identifiable and preventable.]

Finally, there is ample evidence to support the PCR court's conclusion that both Respondent and his counsel had actual notice of the State's intentions. Trial counsel testified at the PCR hearing that he had notice several months prior to Respondent's trial, and Respondent indicated on several occasions, including months in advance of trial, that he knew he was facing an LWOP sentence under "the habitual criminal act."

*James*, 641 S.E.2d at 901-03.

The state supreme court reasoned that the petitioner could not show prejudice for two separate reasons. The second reason was premised upon its construction of the notice requirements of Section 17-25-45(H). The court determined, as a matter of state law, that only actual notice was required, and it further concluded that both the petitioner and his attorney had actual notice. *James*, 641 S.E.2d at 902-903. As argued by the respondent, this court cannot grant habeas corpus belief based upon a conclusion that the state supreme court's interpretation of state law was incorrect. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions."). Therefore, as a matter of state law,

any objection by trial counsel asserting that the State failed to serve the petitioner personally with notice would not have resulted in any relief to the petitioner. Accordingly, the petitioner suffered no prejudice from his counsel's failure to object.

Further, the state supreme court's first stated reason for denying relief was also correct. As the court found, the record clearly reflects that the issue of notice first arose pre-trial and before jeopardy had attached. *See Crist v. Bretz*, 437 U.S. 28, 35 (1978) (jeopardy attaches in a jury trial when the jury is empaneled and sworn). Therefore, even assuming that competent counsel would have objected based on the lack of written notice instead of stipulating that the notice actually received was adequate, such an objection would not have changed the result of the petitioner's sentencing. To the contrary, as the state supreme court found, the State could simply have dismissed the indictment if the petitioner's attorney had objected. Then, he could have re-indicted the petitioner, provided him with written notice "and proceeded to seek an LWOP sentence." *James,* 641 S.E.2d at 901-02. This would not have violated double jeopardy. *See*, *e.g.*, *Lomax v. Armontrout*, 923 F.2d 574, 576 (8th Cir. 1991) (subsequent prosecution of defendant did not place him in double jeopardy where nolo prosequi filed by prosecutor in initial trial was entered before jury was sworn); *Rodrigues v. Gudeman*, 794 F.2d 1458, 1460 (9th Cir. 1986) (pretrial "acquittal" on basis of insanity defense does not bar subsequent prosecution on same charge); *Klobuchir v. Pennsylvania*, 639 F.2d 966, 970 (3d Cir.1981) (double jeopardy does not prevent subsequent prosecution after guilty plea was vacated because jeopardy had not attached); *United States v. Garcia*, 589 F.2d 249, 251 (5th Cir. 1979) (subsequent indictment after dismissal of initial indictment not barred because jeopardy had not attached).

Alternatively, the state supreme court properly concluded that "leaving jeopardy analysis aside, it would have been entirely proper for the solicitor, upon hearing counsel's objection, to have concluded with the pre-trial motions in the case and postponed

18

Respondent's trial to allow the solicitor to provide Respondent with written notice. Either of these procedures would have resulted in Respondent receiving an LWOP sentence despite the objection that Respondent contends trial counsel should have offered." *James,* 641 S.E.2d at 902.

Based upon the foregoing, the state supreme court properly concluded that it was not possible for the petitioner to show prejudice resulting from trial counsel not raising an objection on the issue of notice. The state supreme court's decision was not "contrary to" and did not involve an "unreasonable application of" Supreme Court precedent. Also, the factual findings are not objectively unreasonable under 28 U.S.C. § 2254(d)(2), and the petitioner cannot meet his burden of rebutting the presumption of correctness accorded to those findings. *See* 28 U.S.C. § 2254(e)(1).

### Ground Three

In ground three, the petitioner maintains that counsel was ineffective because he did not ask the trial judge to charge the jury that larceny is a lesser included offense of armed robbery. The trial judge defined armed robbery and robbery in accordance with state law, including the definition of larceny in the elements of those offenses. However, he did not charge the jury that the petitioner could be convicted of larceny as a lesser-included offense of robbery (App. 255-58). Trial counsel did not ask the trial judge to charge larceny as a lesser-included offense. His request for the trial judge to more fully charge on robbery was denied (App. 264-65).

The petitioner testified at the PCR hearing that the trial judge failed to explain that larceny is a lesser-included offense of armed robbery and robbery. The petitioner's recollection was that counsel asked the trial judge to clarify the robbery instruction but "I don't believe the clarification was there." The jury was not instructed that larceny can be a lesser-included offense of robbery, and this verdict was not included on the verdict form

19

(App. 337-38, 341).  His PCR attorney also read the relevant portion of the jury instructions at the PCR hearing (App. 255-58, 339-41).

Mr. Hill testified that he did not ask the trial judge to charge the lesser-included offense because he did not think the facts supported this instruction or that the judge would have granted his requested instruction.  "It was clearly a robbery.  The distinction was whether [it was an] armed robbery or common law or strong armed robbery" (App. 365-66).

The PCR judge rejected the petitioner's claim, reasoning as follows:

> The Applicant also claimed counsel was ineffective for failing to request the trial court charge the jury on larceny as a lesser included offense. Trial counsel testified that he did not request such a charge because he did not feel the facts supported it. This Court agrees.  Furthermore, this Court would note that the jury was provided with strong arm robbery as a lesser included offense and was instructed to resolve any doubt they had regarding the Applicant's guilt in favor of the lesser offense. Since the jury returned with a verdict of guilty of armed robbery they were convinced beyond a reasonable doubt that the Applicant was guilty of the greater offense. There is no reasonable likelihood the jury would have found the Applicant guilty of larceny even had it been charged.

(App. 393).

Upon indictment for a greater offense, the trial court has the requisite jurisdiction to charge and convict a defendant of any lesser included offense. *See State v. Patterson*, 522 S.E.2d 845, 854 (S.C. Ct. App.1999).  However, a lesser included offense instruction is required only when the evidence warrants such an instruction. *Id.*  "The law to be charged is determined by the evidence presented at trial." *State v. Gourdine*, 472 S.E.2d 241 (S.C. 1996).  "Due process requires that a lesser included offense be charged when the evidence warrants it but only if the evidence would permit a jury rationally to find the defendant guilty of the lesser offense." *Patterson*, 522 S.E.2d at 854.

In South Carolina, "robbery" is defined as the "felonious or unlawful taking of money, goods, or other personal property of any value from the person of another or in his

20

presence by violence or by putting such person in fear." *State v. Drayton*, 361 S.E.2d 329, 335 (S.C. 1987). "Armed robbery occurs when a person commits robbery while armed with a deadly weapon." *Id.*; S.C. Code Ann. § 16-11-330(A) (2003). More specifically, "[r]obbery is the crime of larceny accomplished with force, while larceny is the 'felonious taking and carrying away of the goods of another' against the owner's will or without his consent. Thus, asportation is an element of robbery and armed robbery." *State v. Keith*, 325 S.E.2d 325, 325-26 (S.C. 1985) (quoting *State v. Brown*, 260 S.E.2d 719, 720 (S.C. 1979)) (citations omitted).

As argued by the respondent, the evidence at trial did not support a jury instruction for larceny. Rather, the petitioner's trial counsel reasonably understood that the evidence showed either a robbery, as the petitioner's testimony at trial suggests, or an armed robbery. As the evidence did not support a jury instruction for larceny, the trial counsel's performance was not deficient. Further, as noted by the PCR court, the jury found the petitioner guilty of *armed robbery*, although the lesser offense of robbery was also charged. There is no reasonable likelihood that the petitioner would have been found guilty of larceny even if it had been charged. Based upon the foregoing, the state court's decision was not contrary to, nor did it involve an unreasonable application of, Supreme Court precedent. Further, the decision was based on a reasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, the claim fails.

### Ground Four

In ground four, the petitioner alleges that his trial counsel was ineffective of failing to determine the status of his earlier direct appeal of a 1973 armed robbery conviction because that conviction was used by the State as the predicate offense for seeking an LWOP sentence. The petitioner complained of this failure by trial counsel at the PCR hearing, but he did not know the status of the appeal at that time. The PCR judge

agreed to leave the record open on this allegation (App. 344-45, 347-48, 379-80). The petitioner admitted that he had been convicted of this offense and he made parole in 1982. He also identified the respondent's Exhibit 1 (App. 389) as the certificate of parole for that offense (App. 354-58). The respondent attached to the motion for summary judgment records from the state supreme court showing that the appeal had been dismissed before the petitioner's April 1998 trial (resp. m.s.j., December 18, 2002 aff.). The PCR court found that the direct appeal was dismissed in 1975, leaving the conviction intact (App. 393). Accordingly, the court found he could not show prejudice from his trial counsel's failure to investigate the disposition of the appeal, as an investigation would not have produced a beneficial result. This finding by the state court was clearly proper. Accordingly, this claim fails.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment be granted.

s/William M. Catoe
United States Magistrate Judge

July 25, 2008

Greenville, South Carolina

22